**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

POLARIS INDUSTRIES, INC.

      Defendant

---

## COMPLAINT

---

COMES NOW Plaintiff Juan Carlos Gil, by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Polaris Industries, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al., and allege as follows:

### INTRODUCTORY STATEMENT

1.      Plaintiff Juan Carlos Gil brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Polaris Industries, Inc.'s website (which is a retail establishment and is also an extension of retail stores (dealerships) that sell Polaris merchandise throughout the United States of America, where the groundbreaking "American with Disabilities Act" has been the law of the land for over twenty-six years.

1

2.      Companies operating on the internet twenty years (20) after consumers starting using the internet to better their lives, business and governments have to make decisions on whether to be inclusive, or to exclude people.

3.      When the owners and operators of a website do not take the steps necessary to notice people of their website's limitations or to provide programming that works (interfaces) with universal screens readers[1], they are not only disrespecting the disabled community, but they are actively excluding these same disabled people from their business, which in fact segregates the disabled into being non-participants, ie: second-class citizens.

4.      When websites are not fully accessible to all, it's essentially a bad business practice, a detriment to theirs stakeholders, the disabled, and society.

5.      In a world where there are an increasing number of low vision and blind individuals whose population is expected to double by 2050, it is essential that low vision and blind individuals are not excluded from society and segregated in area of web commerce.

6.      This case arises out the fact that Defendant Polaris Industries, Inc. has operated its business in a manner and way that completely excludes individuals with disabilities who are visually impaired from enjoying and accessing the Defendant's website www.polaris.com.

7.      Defendant Polaris Industries, Inc. (also referenced as "Defendant") owns and operates places of public accommodation which are specialty retail stores  under the

---

[1] A "screen reader" is a software application that enables people with severe visual impairments to use a computer. Screen readers work closely with the computer's Operating System (OS) to provide information about icons, menus, dialogue boxes, files and folders.

brand name "Polaris" which sell snowmobiles and wearables.   Polaris stores offer for sale to the general Polaris brand snowmobiles, and Polaris branded merchandise such as sports and casual clothing, backpacks, and accessories[2]. Heretofore, referenced as "Polaris brand merchandise"

8.      The Defendant offers an adjunct website www.polaris.com ("website") which is directly connected to its Polaris stores since the website provides a site locator to the Defendant's Polaris physical store locations (places of public accommodation). Thus, www.polaris.com ("website") has a true nexus to the Defendant's Polaris retail stores.

9.      This complaint seeks declaratory and injunctive relief to correct the Defendant's policies and practices, to include measures necessary to ensure compliance with federal law, to include monitoring of such measures, and to update and remove accessibility barriers on the Defendant's www.polaris.com website so that the Plaintiff (and other individuals who are visually impaired and who cannot access and comprehend the websites that operate therein without the aid of assistive technology) will be able to independently and privately use the Defendant's www.polaris.com website. This complaint also seeks compensatory damages to compensate the Plaintiff for having been subjected to unlawful discrimination.

## JURISDICTION & VENUE

10.      This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al.

---

[2] Helmets, goggles, glass wear, water bottles., key chains, money clips, hats, goggles,

11.     This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet website for services to order Polaris brand merchandise online.

12.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant's  website is available to the general public within this district,  and the acts constituting the violation of the ADA occurred in this District.

13.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

**THE PARTIES**

**Juan Carlos Gil**

14.     Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

15.     Plaintiff Juan Carlos Gil is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h).   Juan Carlos Gil suffers from cerebral palsy and optic nerve damage; as such, he is legally blind. Therefore, Juan Carlos Gil is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world, adequately traversing obstacles and walking without assistance.

16.     Plaintiff Gil cannot use the computer without the assistance of screen reader software.

**Polaris Industries, Inc.**

17.     Defendant Polaris Industries, Inc. (also referenced as Defendant) was the first manufacturer of the snowmobile in the United States (first manufacture for commercial was in 1956. The Polaris brand snowmobile is the preeminent name in snowmobiles, and Polaris sells its various snowmobile models worldwide.  Polaris  has developed ultra-light combat vehicles for the U.S. Military, and also has purchased Brammo, Inc., which manufactures electrical motorcycles.

18.     Polaris Industries, Inc. is a NYSE public company, headquartered in Minnesota.  While the majority of its manufacturing operations are in Minnesota, the company has opened a manufacturing plant in Mexico and is in the process of setting up another manufacturing plant in Alabama.

19.     The Polaris  brand primary focus is snowmobiles which are sold by authorized dealers and also can be purchased through its website.  Other Polaris brand merchandise is sold through dealerships and through its website, and virtually all such Polaris brand merchandise promptly display the Polaris logo and name.

20.     Based on the fact that the Defendant's website www.polaris.com is available to the general public within the jurisdiction of this court, the Defendant is conducting business within the State of Florida and therefore is within the  jurisdiction of this court.

## FACTS

21.     One of the functions of the Defendant's website www.polaris.com ("website") is to provide the general public information on the various locations of the Defendant's Polaris dealerships (stores which sell Polaris snowmobiles) throughout the

United States.  As such, the Defendant's website www.polaris.com services the various Polaris dealership locations. Since the www.polaris.com website allows the general public the ability to locate one of the many Polaris dealership locations, the website is an extension of the physical Polaris dealerships. Hence there is a direct nexus between the www.polaris.com website and the Defendant's Polaris stores. By this nexus, the website is characterized as a place of public accommodation; 42 U.S.C. § 12181(7)(E).

22.     The www.polaris.com website also educates the general public about the wide range of Polaris brand merchandise available for purchase and functions as an 'on-line' store, because the website allows the general public access to purchase online a wide range of Polaris brand merchandise[3] and have it delivered to one's home.

23.     As such, the website is a sales establishment, which is a "Place of public accommodation" defined as "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

24.     Therefore, the website and must comply with the ADA. This means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.  As such, the Defendant has subjected itself and the website it has created and maintains, to the Americans with Disabilities Act ("ADA").[4]

---

[3] It is also possible to order a custom built snowmobile online through the Defendant's website.
[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

25.     Plaintiff Juan Carlos Gil is a customer who is interested in purchasing Polaris brand merchandise which is offered through the Defendant's www.polaris.com website.

26.     The opportunity to shop for Polaris brand clothing, sports water bottles, and backpacks from his home is an important accommodation that the Plaintiff, because traveling outside the home as a blind individual is a difficult and frightening experience.

27.     Plaintiff Juan Carlos Gil frequently utilizes the internet. In order to comprehend   information available on the internet and access/comprehend websites, Plaintiff Juan Carlos Gil uses commercially available screen reader software to interface with the various websites.

28.     In order to comprehend the Defendant's website and to become informed of the Defendant's Polaris brand merchandise (which other members of the general public may order online), Plaintiff Juan Carlos Gil must use screen reader software.

29.     Buying and ordering Polaris brand sport clothing, water bottles and backpacks online and having those purchases delivered to one's home is a highly sought after accommodation that helps improve the lives of vision impaired people such as the Plaintiff (and thousands of others like him), and helps them integrate and participate in society.

30.     Like most of us, Plaintiff Juan Carlos Gil accesses several websites at a time to compare merchandise and prices. When shopping  online, Plaintiff Gil may look at several dozen websites to compare features, styles, and prices.

31.    Plaintiff Juan Carlos Gil is interested in purchasing Polaris brand merchandise, and decided to shop online to learn about the Polaris brand merchandise through its website, www.polaris.com.

32.    During the month of August 2016, the Plaintiff attempted on several occasions to utilize the Defendant's to educate himself as to the Polaris brand merchandise with the intent of making a purchase. The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which is the most popular screen reader software utilized worldwide as it allows individuals who are visually impaired to comprehend information available on the internet and access websites.

33.    However, the Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

34.    The Defendant's website contains access barriers that prevent free and full use by visually impaired individuals using keyboards and screen reading software. These barriers are pervasive and include, but are not limited to: the lack of alt-text on graphics, inaccessible forms, the lack of adequate prompting and labeling; the denial of keyboard access; and the requirement that transactions be performed solely with a mouse.

35.    The Defendant's website also lacks prompting information and accommodations necessary to allow visually impaired individuals who use screen reader software to locate and accurately fill-out online forms to purchase Polaris brand merchandise. On a shopping website such as www.polaris.com, these forms include search fields to locate products, fields that specify the number of items desired, and fields

used to fill-out personal information, including address and credit card information. Due to the lack of adequate labeling, visually impaired customers cannot easily make purchases or inquiries as to Polaris brand merchandise, nor can they enter their personal identification and financial information with confidence and security.

36.     The Plaintiff attempted to locate any ***Accessibility Notice*** or any information relating to the website's future accessibility plans or information regarding contacting the Defendant to alert the Defendant to the inaccessibility of its website www.polaris.com, but was unable to do so, because no such link or notice was provided[5].

37.     The fact that Plaintiff Gil could not interface with the Defendant's www.polaris.com website left him feeling as if another door had been slammed in his face, as he is/was unable to participate in the shopping experience online at the www.polaris.com website as experienced by the general public, 26 years after the Title III of the ADA was enacted and which promised to remove such barriers.

38.     Plaintiff Juan Carlos Gil and others of low vision want to patronize the www.polaris.com website, but are unable to do so due to their vision impairment because the website has not been designed to accommodate low vision people.  Thus, the Plaintiff and others will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

---

[5] Other online retailers have taken steps  to notice and inform disabled users of their website programming plans and have direct email / toll free numbers to enable contact with the retailer e.g.
http://www.starbucks.com/about-us/company-information/online-policies/web-accessibility
http://www.tiffany.com/Service/Accessibility.aspx?isMenu=1&
http://www.potbelly.com/Company/Accessibility.aspx

39.     The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner.

40.     The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

41.     The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

42.     On information and belief, the Defendant has not initiated a Web Accessibility Policy to insure full and equal use of the Polaris website by individuals with disabilities.

43.     On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

44.     On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

45.     On information and belief, the Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

46.     On information and belief, the Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of its website by individuals with disabilities.

47.     On information and belief, the Defendant has not instituted a Bug Fix Priority Policy.

48.      On information and belief, the Defendant has not instituted an Automated Web Accessibility Testing program.

49.     On information and belief, the Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

50.     On information and belief, the Defendant has not created and instituted on its website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have its website, Applications, and Digital Assets accessible to the visually impaired community.

51.     On information and belief, the Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[6].

52.     On information and belief, the Defendant does not have a Web Accessibility Policy.

53.     On information and belief, the Defendant has not disclosed to the public any intended 1) audits, 2) changes, or 3) lawsuits to correct the inaccessibility of their

---

[6] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

website vis-a-vis disabled individuals who are visually impaired who want the safety and privacy of purchasing products online from their homes like other Americans.

54.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website www.polaris.com.

55.     Under the ADA, all places of public accommodation must ensure that the disabled individuals enjoy full and equal enjoyment of its goods and services by making reasonable modifications to its services and sales policies and procedures.

56.     Public Accommodations that use the Internet for communications regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

57.     For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society with safety and in dealing with terms of their disability.

58.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the Defendant's website, where they have a direct connection.

59.     On information and belief, the Defendant is aware of these common access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend its website to become informed of its Polaris brand merchandise available through Polaris dealerships and available for purchase online.

60.     On information and belief, the Defendant is aware of need to provide full access to all visitors of the Website.[7]

61.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

62.     Such barriers result in punishment and isolation of blind and low vision from the rest of society.

63.     Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

64.     According to Statistic Brain Research Institute[8], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores such as www.polaris.com and have made an internet purchase, while 57% of Americans that have browsed online stores have made a purchase multiple times.

65.     According to the National Federation for the Blind[9], there are 6,670,300 Americans with visual disabilities.

66.     The National Federation for the Blind has also reported that there are over half a million people with visual disabilities living within the state of Florida.

67.     The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as the Plaintiff. The Defendant is

---

[7] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (www.internetretailer.com/2016/04/01/web-accessibility-what-e-retailers-need-know) (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance)

[8] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

[9] Statistics for 2012, see http://www.NFB.org/blindness-statistics

operating in violation of Plaintiff Juan Carlos Gil's rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

68.    Plaintiff Juan Carlos Gil has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

69.    Plaintiff Juan Carlos Gil and others will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

70.    Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations. Enforcement of the Plaintiff's rights is right and just pursuant to 28 U.S.C. §§s 2201, 2202.

71.    The Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

72.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-71 above.

73.    The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their

sites are fully accessible to individuals with disabilities[10].

74.     As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to the general public on its website www.polaris.com, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

75.     Pursuant to 42 U.S.C. §12181(7)(E), www.polaris.com (the Defendant's website) is a *place of public accommodation* under the ADA because it provides the general public with the ability to purchase Polaris brand merchandise online and have those items available for pick up or delivered to one's home and also the ability to custom order a Polaris brand snowmobile and have it delivered to one's home.

76.     Further, the www.polaris.com website also serves to augment the Defendant's Polaris dealerships throughout the United States by providing the general public information on the various locations of Polaris dealerships and to educate the general public as to the line of Polaris brand merchandise (sold on www.polaris.com and through Polaris dealerships).

77.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities,

---

[10] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

78.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

79.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

80.     As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA.  Plaintiff Juan Carlos Gil has suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

81.     Types of website programming errors include (but are not limited to) *Programming Error Types* ("PETs"), which are easily identifiable and correctable, and

*Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible.

82.     A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired.  The Defendant's website contains several types of PETs (easily identifiable and correctable), which occur throughout the website such as:

1)  The language of the document is not identified,
2)  Image alternative text is not present, and
3)  A form control does not have a corresponding label.

83.     Further, the Defendant's website contains various types of PATs (prone to making the website inaccessible), which occur throughout the website, such as:

1)  Alternative text is likely insufficient or contains extraneous information,
2)  An event handler is present that may not be accessible,
3)  A heading level is skipped,
4)  Flash content is present,
5)  Adjacent links go to the same URL,
6)  A link contains no text, and
7)  Alternative text is likely insufficient or contains extraneous information.

84.     More violations may be present on other pages of the website, and they will be determined and proven through the discovery process.

85.     Further, the Defendant's website did\does not offer include the universal symbol for the disabled[11] which would permit disabled individuals to access the website's accessibility information and accessibility facts.

---

[11]  , or HTML "Accessibility" link for those individuals who are visually impaired

86.     Therefore, due to the Plaintiff's disability and the Defendant's failure to have its website adequately accessible to individuals with visual impairments, the Plaintiff was unable to comprehend the Defendant's website.

87.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include (but not limited to) adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Defendant's www.polaris.com website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

88.     The Defendant has violated the ADA (and continues to violate the ADA) by denying access to www.polaris.com to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the www.polaris.com website are ongoing.

89.     As a result of the Defendant's inadequate development and administration of www.polaris.com, Plaintiff Juan Carlos Gil is entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

90.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a)  Require Defendant Polaris Industries, Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the

18

homepage of www.polaris.com to a statement as to Polaris Industries, Inc.'s policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

b) Require Defendant Polaris Industries, Inc. to cease and desist discriminatory practices and if necessary to cease and desist operations of the website known as www.polaris.com until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

91.     Plaintiff Juan Carlos Gil has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff Juan Carlos Gil is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Polaris Industries, Inc.

## COUNT II – VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

92.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–71 above.

93.     The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510, ("ECPA") regulates wire and electronic communications interception and interception of oral communications. Within the meaning of 18 U.S.C. § 2511(1), it is unlawful for a person to: intentionally intercept, endeavor to intercept, or procure . . . any other person to intercept or endeavor to intercept any wire, oral, or electronic communication.

94.     The Defendant violated 18 U.S.C.§2511 by intentionally acquiring and/or intercepting (through the www.polaris.com website), by device or otherwise, Plaintiff Gil's electronic communications, *without knowledge*, consent, or authorization.

95.     The Defendant did not obtain any permission[12] from Plaintiff to install any electronic software on his computer.

96.     The Defendant did not obtain any permission[13] from Plaintiff to install any analytic devices on his computer.

97.     The contents of data transmissions from and to Plaintiff's personal computer constitutes "electronic communications" within the meaning of 18 U.S.C. §2510.

98.     Plaintiff Juan Carlos Gil is a "person whose . . . electronic communication is intercepted . . . or intentionally used in violation of this chapter" within the meaning of 18 U.S.C. § 2520.

99.     The Defendant violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting, endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept the Plaintiff's electronic communications when the Plaintiff navigated (and attempted to comprehend) the www.polaris.com website.

100.    The Defendant violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or endeavoring to disclose, to any other person, the contents of the Plaintiff's electronic communications, knowing or having reason to know that the information was obtained through the interception of the Plaintiff's electronic communications.

---

[12] Implied or otherwise
[13] Implied or otherwise

101.     The Defendant violated 18 U.S.C. § 2511(1)(d) by intentionally using or endeavoring to use, the contents of the Plaintiff's electronic communications, knowing of having reason to know that the information obtained through the interception of the Plaintiff's electronic communications.

102.     The Defendant's intentional interception of these electronic communications was without the Plaintiff's knowledge, consent, or authorization and was undertaken without a facially valid court order or certification.

103.     The Defendant unlawfully accessed and used the contents of the intercepted communications. On information and belief, such use included the enhancement of the Defendant's profitability and revenue.

104.     The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2520(a) provides a civil cause of action to "any person whose wire, oral, or electronic communications is intercepted, disclosed, or intentionally used" who is in violation of the ECPA.

105.     The Defendant is liable directly and/or vicariously for this cause of action. Plaintiff Juan Carlos Gil therefore seek remedy as provided for by 18 U.S.C. § 2520, including such preliminary and other equitable or declaratory relief as may be appropriate and reasonable attorney's fees and other litigation costs reasonably incurred.

106.     Plaintiff Juan Carlos Gil has additionally suffered loss by reason of these violations, including, without limitation, violation of the right of privacy.

107.     Pursuant to 18 U.S.C. § 2520, Plaintiff Juan Carlos Gil  is entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each day of violation, actual and punitive

damages, reasonable attorneys' fees, and Defendant's profits obtained from the above described violations. Unless restrained and enjoined, Defendant will continue to commit such acts. Plaintiff Juan Carlos Gil's remedy at law is not adequate to compensate him for these inflicted and threatened injuries, entitling the Plaintiff to remedy including injunctive relief as provided by 18 U.S.C. § 2510.

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Polaris Industries, Inc. and request the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant Polaris Industries, Inc. has violated the Plaintiff's rights as guaranteed by the ADA and the Electronic Communications Privacy Act 18 U.S.C. §2510 et. al.;

b) The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant Polaris Industries, Inc. from operating its website www.polaris.com without adequate accommodation for the visually impaired community;

c) The Court enter an Order requiring Defendant Polaris Industries, Inc. to update the www.polaris.com website to remove barriers in order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA;

d) The Court enter an Order requiring Defendant Polaris Industries, Inc. to clearly display the universal disabled logo[14] within its website, wherein the logo would lead to a page which would state Polaris Industries, Inc.'s accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of website www.polaris.com;

e) The Court enter an order requiring Defendant Polaris Industries, Inc. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

f) The Court enter an Order directing Defendant Polaris Industries, Inc. to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to the website known as www.polaris.com

g) The Court enter an Order directing Defendant Polaris Industries, Inc. to establish a policy of web accessibility and accessibility features for the website known as www.polaris.com.

h) The Court to declare the "Terms and Conditions" and "Privacy Policy" as delineated on the website  www.polaris.com null and void and rescinded

---



14

and not applicable to the Plaintiff, due to the inaccessibility of the website for visually impaired individuals such as the Plaintiff who have no means to comprehend said "Terms and Conditions" and "Privacy Policy"

i) The Court to declare that the privacy rights of the Plaintiff have been violated by the unwarranted and unauthorized software and analytics that have been placed on Plaintiff's computer without his consent;

j) requiring the Defendant to provide reasonable notice and choice to vision impaired and low vision consumers regarding the Defendant's data collection, profiling, merger, and de-anonymization activities;

k) require the Defendant to provide Plaintiff reasonable means to decline, permanently, participation in Defendant's collection of data from and about the Plaintiff;

l) The Court to restrain, by preliminary and permanent injunction, Defendant, its officers, agents, servants, employees, and attorneys, and those participating with them in active concert, from identifying the Plaintiff online, whether by personal or pseudonymous identifiers, and from monitoring, accessing, collecting, transmitting, and merging with data from other sources any information from or about the Plaintiff;

m) The Court award reasonable attorney's fees, damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit, to the Plaintiff; and

n) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 7th day of September, 2016.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_